IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| United States of America | : | |
| | : | Case No. CR-1-07-014 |
| | : | |
| | : | District Judge Susan J. Dlott |
| v. | : | |
| | : | ORDER DENYING |
| RICARDO MEADOWS | : | DEFENDANT'S MOTION TO |
| | : | SUPPRESS |
| Defendant | : | |

This matter comes before the Court on Defendant Ricardo Meadow's Motion to Suppress (doc. 14). The Court held a hearing on the motion on August 1, 2007. The matter is now ripe for review. For the reasons that follow, the Court **DENIES** Defendant's motion.

I. FACTUAL BACKGROUND

Defendant Meadows was arrested on December 5, 2006 on two counts of illegal possession of a firearm and one count of forfeiture after two Cincinnati Police Officers discovered a firearm on his person during an attempted pat down. Meadows moves to suppress the firearm and any evidence related thereto on the basis that the officers conducted an invalid warrantless search of his person.

At the hearing on Meadows' Motion to Suppress, the Government called one witness, Cincinnati Police Officer Jason Reese,[1] who described the following events. On the evening of December 5, 2006, Officers Reese and Putnick were on uniform patrol in the Over the Rhine

---

[1] Defendant Meadows cross-examined Officer Reese but called no witnesses of his own.

neighborhood of Cincinnati. While on patrol at East McMicken Avenue and Walnut Street, the officers observed two individuals, who they later learned to be Meadows and Gary Clark, engage in what they believed to be a hand-to-hand drug transaction outside of Martin's Bar.

Describing his observations in greater detail, Officer Reese testified that he had been observing the corner for about a minute when he first saw Meadows, who was standing with his back turned toward Martin's Bar such that his front was visible to the officers. The other individual involved in the transaction, Clark, was standing slightly facing away from the officers. Officer Reese believed he saw Meadows and Clark exchange two objects, though he could not identify what those objects were. Meadows was slightly hunched over during the exchange in a manner Officer Reese described as suspicious.

As to his experience assessing such behavior, Officer Reese testified that as of the night in question he had been a Cincinnati Police Officer for approximately three years. During that time, he received standard Police Academy training in narcotics as well as extensive on-the-job training from field officers. He has made several drug-related arrests and has, in the past, observed hand-to hand transactions. Officer Reese further testified that a significant level of drug trafficking occurs at night.

After they observed the interaction between Meadows and Clark, the officers turned on their lights and approached with their police cruiser. As they approached, Meadows turned and walked towards Martin's Bar. Officer Reese exited the cruiser and told Meadows and Clark to stop. Officer Putnick began talking to Clark. Meadows, however, continued walking. Officer Reese again told Meadows to stop. Again, Meadows did not stop, but rather entered Martin's Bar. Repeating his order, Officer Reese followed Meadows into the bar and caught up with him

as he was about to go into the bathroom. Meanwhile, Officer Putnick had also entered the bar. According to Officer Reese, Martin's Bar is a known criminal gathering place and the Police Department has deemed the bar to be so dangerous that an officer is no longer allowed to enter without back-up. As a result, when Officer Putnick saw Officer Reese follow Meadows into the Bar, Officer Putnick had to cease questioning Clark and assist Officer Reese.

When Officer Reese caught up with Meadows outside of the bathroom, he grabbed Meadows' jacket and told him to come outside. Meadows initially complied, but then Officer Reese perceived him make a concerted effort to move his right hand toward his waistband. As a result, Officer Reese took hold of Meadows' arm to ensure he would not be able to reach into his waistband, and led him outside.

Once outside, the situation only escalated when Meadows once again refused to comply with Officers Putnick's and Reese's orders to put his hands on the wall. Instead, Meadows resisted Officer Reese and again made an effort to reach into his waistband. A struggle ensued between Meadows and Officer Reese, during which Officer Reese felt a gun in Meadows' waistband. Officer Reese announced that Meadows had a gun and Officer Putnick shot Meadows with his taser. As Meadows was hit with the taser, a gun flew out of his hand. At some point thereafter, back-up arrived and the officers placed Meadows under arrest.

**II.    ANALYSIS**

Meadows moves to suppress all evidence seized during his arrest, including the gun found on his person, on the basis that the officers lacked reasonable suspicion to support the initial stop and that all evidence seized as a result of that stop is inadmissible. The Government responds that the stop was entirely within the bounds of Terry v. Ohio, 392 U.S. 1 (1968).

An officer may "stop and briefly detain a person for investigatory purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" United States v. Sokolow, 490 U.S. 1, 7 (1989) (quoting Terry v. Ohio, 329 U.S. 1, 30 (1968)). In all cases, the scope of the Terry stop must be "reasonably be related to the circumstances that initially justified the stop." United States v. Richardson, 949 F.2d 851, 856 (6th Cir. 1991).  The reasonableness of the stop depends on two factors: "(1)whether there was a proper basis for the stop, which is judged by examining whether the law enforcement officials were aware of specific and articulable facts which gave rise to a reasonable suspicion; and (2) whether the degree of intrusion into the suspect's personal security was reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances." United States v. Hardnett, 804 F.2d 353, 356 (6th Cir. 1986).  An officer conducting a Terry stop may also frisk the individual for weapons whenever there is an objectively reasonable belief that the subject may be armed.  See Terry, 392 U.S. at 30 (holding that during the course of a Terry stop an officer "is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him").

In assessing the reasonableness of the officers' actions, the Court must look "at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." United States v. Arvizu, 534 U.S. 266, 273 (2002) (quoting United States v. Cortez, 449 U.S. 411, 417-18 (1981)). The court "allows officers to draw on their own experience and specialized training to make

inferences from and deductions about the cumulative information available to them." Arvizu, 534 U.S. at 273.

In the instant case, the Government argues that the officers had reasonable suspicion to stop Meadows based on their observation of what they perceived to be a hand-to-hand drug transaction between Meadows and Carter. The Government relies on United States v. Paulette, 457 F.3d 601 (6th Cir. 2006), in which the Sixth Circuit upheld the lower court's denial of the defendant's motion to suppress evidence seized during a stop similar to the stop that occurred in this case. In Paulette, two police officers observed the defendant and another individual engage in a hand-to-hand exchange. Based on their knowledge of the area and experience with drug crimes, the officers believed the transaction to be related to drugs. Id. at 602. The officers approached in their unmarked squad car. When the defendant saw the officers, he placed his hand near his pocket and started walking away. The officers pursued and eventually detained the defendant. Id. at 603. The officers then conducted a pat down for weapons and found two plastic bags of marijuana on the defendant's person. The defendant moved to suppress the evidence arguing that the officers lacked reasonable suspicion to stop him. In upholding the lower court's denial of the defendant's motion, the Sixth Circuit found as follows:

> Viewing the totality of the circumstances, the officers had a reasonable suspicion that Paulette was engaged in criminal activity based upon his hand movements consistent with drug-dealing activity, efforts to evade the police upon noticing them, and presence in a high crime area. The officers were also justified in searching Paulette for their own protection, given the frequency with which drug dealers arm themselves, Paulette's insistent movements towards his right pocket, and his presence in a high crime neighborhood.

Id. at 606.

Based on the Sixth Circuit's holding in Paulette, the facts of which are not materially distinguishable from those of the instant case, the Court finds that the initial stop and attempted pat down of Meadows was supported by reasonable suspicion. Officer Reese sufficiently articulated the basis for his belief that Meadows was engaged in drug-related activity. Specifically, Officer Reese based this belief on his observation of Meadows engaging in a hand-to-hand transaction that, due to his experience observing similar exchanges, appeared to be drug related. When the officers subsequently approached Meadows he turned and walked away, ignoring Officer Reese's repeated instruction to stop, and continued to try to retrieve something from his waistband after Officer Reese pursued him. Finally, Officer Reese testified that Martin's bar was extremely dangerous and that, in his experience, individuals engaged in drug related activity are often armed. Viewing the totality of the circumstances, Officer Reese had reasonable suspicion to stop Meadows and frisk him for weapons. Accordingly, Meadows' motion to suppress is denied.

### III.  CONCLUSION

For the reasons stated above, Defendant Meadows' Motion to Suppress is **DENIED**. The physical evidence seized in connection with the stop and subsequent arrest of Defendant Meadows as well as the statements that Meadows provided to the officers are admissible.

IT IS SO ORDERED.

                                                 s/Susan J. Dlott
                                                Susan J. Dlott
                                                United States District Judge